UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------X
JANOS O. GAGOVITS,

                    Plaintiff,

                                        <u>MEMORANDUM & ORDER</u>
          -against-                      15-CV-3246(JS)

CAROLYN W. COLVIN, Acting Commissioner
of Social Security,

                    Defendant.
--------------------------------------X
APPEARANCES
For Plaintiff:      Stephen M. Jackel, Esq.
                    Law Office of Stephen M. Jackel
                    277 Broadway, Suite 1010
                    New York, NY 10007

For Defendant:      Candace Scott Appleton, Esq.
                    United States Attorney's Office
                    Eastern District of New York
                    271 Cadman Plaza East, 7th Floor
                    Brooklyn, NY 11201

SEYBERT, District Judge:

          Plaintiff Janos Gagovits ("Plaintiff") commenced this
action pursuant to 42 U.S.C. § 405(g) of the Social Security Act
("the Act"), challenging the Commissioner of Social Security's
(the "Commissioner") denial of his application for disability
insurance benefits under Title II of the Act.  Presently before
the Court are the Commissioner's motion for judgment on the
pleadings (Docket Entry 11) and Plaintiff's cross-motion for
judgment on the pleadings (Docket Entry 16).  For the following
reasons, the Commissioner's motion is DENIED, Plaintiff's motion
is GRANTED, and this matter is REMANDED.

BACKGROUND

I. Procedural Background

Plaintiff initially filed for Social Security disability benefits on March 20, 2007, alleging a disability onset date of March 31, 2006.  (R. 87.)  Plaintiff's claim was denied and a hearing took place before an administrative law judge on February 2, 2009. (R. 87.)  In a decision dated June 5, 2009, the administrative law judge found that Plaintiff was not disabled. (R. 87-92.)

Plaintiff subsequently filed for Social Security disability benefits in February 2011, alleging disability due to a left knee injury.  (R. 93, 125.)  Plaintiff's application was denied on June 14, 2011.  (R. 113.)  On or about June 18, 2011, Plaintiff requested a hearing before an administrative law judge. (R. 125.)  The hearing took place on April 25, 2012, before administrative law judge Andrew S. Weiss (the "ALJ").  (R. 97. 102.)  At the hearing, Plaintiff amended his disability onset date to June 5, 2009.  (R. 97.)  On May 3, 2012, the ALJ issued his decision finding that Plaintiff is not disabled.  (R. 94-105.)

On July 3, 2012, Plaintiff requested review of the ALJ's decision by the Appeals Council.  (R. 184-85.)  On July 18, 2013, the Appeals Council issued a decision remanding the case to the ALJ.  (R. 107-09.)  The Appeals Council held that additional development and consideration of the opinions of treating

physicians Dr. Zvi Herschman and Dr. Stephen Kottmeier was warranted. (R. 107.) Additionally, the Appeals Council held that the record was not clear as to whether Plaintiff's 2012 earnings constituted substantial gainful activity. (R. 107.) Finally, the Appeals Council held that the ALJ failed to evaluate all of Plaintiff's physical impairments--particularly, his congenital kidney disorder, moderate hydronephrosis, and obesity. (R. 107-08.) The Appeals Council directed the ALJ to "[o]btain updated medical records, if available, from treating sources in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence (20 CFR 404.1512-1513)." (R. 108.)

The ALJ conducted a second hearing on November 19, 2013 (the "Second Hearing"). (R. 14.) Plaintiff was represented by counsel and the ALJ heard testimony from Plaintiff, as well as Osvaldo J. Fulco, an impartial medical expert, and Darren K. Flomberg, an impartial vocational expert. (R. 14.) On December 19, 2013, the ALJ issued a decision finding that Plaintiff is not disabled. (R. 14-23.) On April 10, 2015, the Appeals Council denied Plaintiff's request for review. (R. 1-4.)

Plaintiff then commenced this action on June 4, 2015. (Docket Entry 1.) The Commissioner and Plaintiff filed cross-motions for judgment on the pleadings on December 16, 2015 and February 1, 2016, respectively. (Docket Entries 11, 16.)

II.  Evidence Presented to the ALJ

    A.  Non-Medical Evidence

        Plaintiff was forty-three years old at the time of the Second Hearing.  (R. 48.)  Plaintiff graduated from high school and attended some college.  (R. 32.)  He lives with his mother, who performs most of the cooking and cleaning in the house.  (R. 49, 55.)  Plaintiff was a New York City police officer for thirteen years until he suffered a ruptured patella tendon in his left knee.  (R. 32.)  He received service connected disability and has not worked since 2006.  (R. 32-33, 49.)

        Plaintiff had two surgeries on his left knee in December 2005 and November 2007.  (R. 34.)  Plaintiff suffers from swelling and sharp pain if he stands or walks for twenty or thirty minutes (R. 50.)  Sitting causes pain, swelling, and fatigue in his knee.  (R. 50-51, 55.)  Plaintiff must elevate his knee two times per day for about an hour per day or periodically get up.  (R. 51.)  Plaintiff takes over the counter medication because stronger prescriptions make him "delusional and mess[ ] with [his] head."  (R. 52.)  Plaintiff uses Voltaren gel on his knee on a daily basis and has used a TENS unit two to three times per week for two years.  (R. 54.)  Plaintiff wears a brace with metal supports at all times.  (R. 55.)  His knee swells daily and the swelling is exacerbated by activity.  (R. 55.)  Plaintiff sits in an elevated recliner.  (R. 56.)

Plaintiff is able to sit at the computer for twenty minutes. (R. 56.) Plaintiff occasionally watches television but cannot not sit and watch an entire football game due to fatigue in his knee. (R. 57.) He can lift up to ten pounds but any additional weight "would cause massive fatigue." (R. 51.) Plaintiff drives to the store or to a doctor's office about five miles away. (R. 58.)

Plaintiff testified that he earned over $12,000 in 2012 from racing greyhounds. (R. 49.) Plaintiff buys the greyhounds and has trainers who race them and care for them. (R. 49-50.)

Plaintiff testified that he is not alleging any mental impairment. (R. 52.) Plaintiff's counsel indicated that Plaintiff is not alleging that his kidney issues render him disabled but "one of the other reasons why he can't take certain medications, pain medications, [is] because of his kidney function." (R. 53.) Plaintiff also testified that his doctors advised that certain medications may be bad for his kidneys. (R. 54.)

Dr. Oslago Fulco,[1] a board certified internist, testified at the Second Hearing. (R. 58.) Dr. Fulco testified that Plaintiff had limitations from 2009 to 2012. (R. 62.) However, Dr. Fulco asserted that after August 1, 2012, Plaintiff could stand and walk for two hours and sit for six hours as long as he had interruptions

---

[1] The transcript of the Second Hearing erroneously refers to Dr. Fulco as "Dr. Fuoco." (See, e.g., R. 58.)

to relieve discomfort, and Plaintiff "would be limited to squatting, crouching and crawling all day occasionally." (R. 62.) Dr. Fulco indicated that "more weight" should be accorded to Plaintiff's treating physician's assessment that Plaintiff was "significantly limited" from 2011-2012. (R. 64-65.) Dr. Fulco did not feel that Plaintiff needed to elevate his leg but conceded that it would be "beneficial." (R. 74-75.) Dr. Fulco also conceded that medical records from 2013 indicated positive for joint pain and stiffness or swelling. (R. 75.)

Keith Thornburg ("Thornburg"), a vocational expert, also testified at the hearing. (R. 66.) The ALJ presented Thornburg with a hypothetical individual who could lift twenty pounds occasionally and ten pounds frequently; stand and walk for two hours and sit for six hours in an eight-hour day; had unlimited abilities to push and pull; and could occasionally climb, balance, stoop, kneel, crouch, and pull. (R. 76.) Thornburg testified that such an individual could not perform Plaintiff's prior work, but could work as a check cashier, telemarketer, or telephone operator. (R. 77.) Additionally, it would not create an issue if that individual needed to keep his leg elevated for fifty percent of the day. (R. 78-79.) However, Thornburg asserted that it would be problematic if that individual had to stand up and move around every half hour and was "off task." (R. 79.) Next, the ALJ inquired about an individual who could sit for only twenty minutes

and stand for only fifteen minutes per day.  (R. 78.)  Mr. Thornburg
testified that such an individual could not perform any jobs in
the national economy.  (R. 78.)

   B. <u>Medical Evidence</u>

      1. <u>Evidence Prior to Disability Onset Date</u>

      On December 20, 2005, Dr. John Mani performed surgery to
repair Plaintiff's left patellar tendon (R. 317.)  On July 26,
2006, an MRI revealed that the patellar tendon was thickened and
intact with a probable postoperative change in the distal
quadriceps tendon; there was an abnormal signal in the anterior
horn of the lateral meniscus; and there was an eight-millimeter
cystic structure adjacent to the anterior horn of the lateral
meniscus that was likely a parameniscal cyst.  (R. 323-24.)

      On November 6, 2007, Plaintiff saw Dr. Stephen Kottmeier
for an assessment of his left knee.  (R. 333.)  Dr. Kottmeier
opined that Plaintiff's history and physical examination suggested
position-related pain laterally to the left knee that was likely
a left knee lateral meniscal tear.  (R. 334.)  That same day,
imaging showed mild degenerative changes in the left knee and no
evidence of fracture or dislocation.  (R. 325.)

      On November 30, 2007, Dr. Kottmeier performed an
arthroscopic left knee partial lateral menisectony. (R. 327.)  Dr.
Kottmeier's post-operative diagnosis was left knee lateral
meniscus tear.  (R. 327.)  On December 11, 2007, Plaintiff saw

Dr. Kottmeier for a follow-up visit.  Dr. Kottmeier's examination revealed postsurgical hemarthrosis, and he performed an arthrocentisis and administered a Lidocaine injection.  (R. 335.) On December 18, 2007, Dr. Kottmeier noted that Plaintiff had a persistent but diminished effusion in the left knee.  (R. 336.) Dr. Kottmeier also noted that Plaintiff would begin physical therapy the following week and was pursuing NSAIDs with cryotherapy.  (R. 336.)

On January 15, 2008, Plaintiff saw Dr. Kottmeier and an examination revealed persistent effusion.  (R. 337.)  Dr. Kottemeir recommended cautious use of NSAIDs and additional testing.  (R. 337.)  On February 26, 2008, Plaintiff saw Dr. Kottmeier and complained of continued swelling and pain in his left knee.  (R. 338.)  Dr. Kottmeier noted persistent effusion and indicated that Plaintiff would continue with physical therapy.  (R. 338.)  On January 6, 2009, Plaintiff saw Dr. Kottmeier and reported left knee swelling and discomfort.  (R. 339.)  Dr. Kottmeier noted that radiographs suggested limited retropatellar degenerative changes. (R. 339.)  Plaintiff reported being "content" with respect to the resolution of his medial meniscal symptoms, but Dr. Kottmeier opined that there were likely features of quadriceps weakness and impaired extensor mechanism function.  (R. 339.)

2. <u>Evidence After Disability Onset Date</u>

    a. <u>Dr. Zvi Herschman</u>

On February 17, 2011, Plaintiff began seeing Dr. Zvi Herschman. (R. 367.) Plaintiff complained of pain in his left knee that is worsened by using the stairs. (R. 367.) Plaintiff was taking Pennsaid, Tylenol, and Azor. (R. 367.) Dr. Herschman noted that Plaintiff was "not very active--just some home activities." (R. 367.) Dr. Herschman assessed Plaintiff as suffering from left knee derangement with residual ligamentous pain. (R. 368.)

Plaintiff saw Dr. Herschman on five occasions during 2011 and reported feeling less knee pain with the brace, Flector and TENS unit. (R. 370-74.) Dr. Herschman characterized Plaintiff's injury as "bothersome, but controllable as long as not stressed too much" with Plaintiff responding well to treatment notwithstanding some painful days. (R. 370-72.) Dr. Herschman noted that Plaintiff's range of motion was good with the brace but he had some peri-articular tenderness and swelling. (R. 370-74.) On July 14, 2011, Dr. Herschman noted that when Plaintiff stood for too long he felt pain during the next couple of days; however, Plaintiff responded to Flector and the TENS unit. (R. 372.)

On February 23, 2012, Plaintiff saw Dr. Herschman and reported feeling less pain in his knee with the brace, Flector, and TENS unit; however Dr. Herschman noted "temperature changes

are a problem for the pain threshold." (R. 375.) Dr. Herschman also noted that Plaintiff had good range of motion with the brace notwithstanding peri-articular tenderness and swelling, and he was responding well to treatment despite some painful days. (R. 375.) Dr. Herschman refilled Plaintiff's Flector and Pennsaid prescriptions and prescribed Voltaren gel. (R. 375.)

On February 27, 2012, Dr. Herschman completed a Physical Residual Functional Capacity Questionnaire. (R. 362-66.) Dr. Herschman diagnosed Plaintiff with internal knee derangements and ligamentous pain and noted that he was "[n]ot likely to return to normal function." (R. 362.) Dr. Herschman listed Plaintiff's symptoms as "pain, difficulty standing, walking, [and] squatting." (R. 362.) Plaintiff's treatment included topical medication, TENS unit, and an artificial knee brace. (R. 362.) Dr. Herschman opined that Plaintiff is capable of low stress jobs. (R. 363.)

Dr. Herschman further concluded that Plaintiff could sit for twenty minutes and stand for fifteen minutes before needing to get up or sit down, and could stand for less than two hours and sit for about two hours in an eight-hour workday. (R. 363-64.) Plaintiff would also need to walk five times during an eight-hour workday. (R. 364.) Dr. Herschman opined that Plaintiff requires a job where he could shift positions at will, take unscheduled breaks for fifteen to thirty minutes, and elevate his leg off the floor for fifty percent of the day. (R. 364.) Plaintiff requires

an assistive device when standing or walking. (R. 364.) Dr. Herschman concluded that Plaintiff could frequently lift less than ten pounds, occasionally lift ten pounds, rarely lift twenty pounds, and never lift fifty pounds. (R. 364.) Plaintiff could frequently twist, rarely stoop, occasionally climb stairs, and never crouch or climb ladders. (R. 365.) Plaintiff was prescribed Lidoderm and Flector. (R. 366.)

### b. Dr. Skeene

On June 1, 2011, Dr. Linell Skeene conducted an orthopedic examination pursuant to a referral from the Division of Disability. (R. 343.) Plaintiff complained of continued left knee pain that he described as sharp, constant, and non-radiating, with 7/10 intensity. (R. 343.) Plaintiff was taking Azor and Zolpidem, and using a Flector patch. (R. 343.) Dr. Skeene observed that Plaintiff did not appear to be in acute distress and did not use an assistive device. (R. 344.) Dr. Skeene noted a limited range of motion in the left knee with 3/5 strength in the left lower extremity. (R. 345.) Dr. Skeene reviewed a left-knee x-ray. (R. 345.) Dr. Skeene concluded that Plaintiff had moderate limitations for prolonged standing and walking due to the limited range of motion of his lumbar spine. (R. 345.)

On June 7, 2011, an x-ray of Plaintiff's left knee revealed no evidence of an acute fracture, dislocation, or destructive bony lesion; well-maintained joint spaces; tiny

inferior patellar osteophyte; and small patellar spurs. (R. 347.)
The radiologist's impression was tiny patellar osteophyte. (R.
347.)

### c.  S. Collier

On June 14, 2011, S. Collier[2] prepared a Residual
Functional Capacity Assessment. (R. 349-54.) Collier's primary
diagnosis was patellar osteophyte. (R. 349.) Collier found that
Plaintiff could occasionally lift twenty pounds; frequently lift
up to ten pounds; sit for about six hours and stand for about four
hours in an eight-hour workday; and was limited in his lower
extremities with respect to pushing and pulling. (R. 350.)
Additionally, Plaintiff could occasionally climb, balance, stoop,
kneel, crouch, and crawl. (R. 351.) Collier concluded that
Plaintiff had the capacity to perform "less than a full range of
light exertion." (R. 350.) Collier also noted that Plaintiff's
statements regarding sharp and piercing knee pain that occurs from
walking, sitting, and standing were credible. (R. 352-53.)

### d.  Dr. Greenberg

On March 24, 2012, Dr. Gerald Greenberg completed a
Medical Interrogatory Physical Impairments as an impartial medical
expert. (R. 377.) Dr. Greenberg did not personally examine
Plaintiff. (R. 377.) Dr. Greenberg concluded that Plaintiff's

---

[2] It is unclear from the record whether "S. Collier" is a
physician.

impairments during the relevant time period do not meet or equal any impairment referenced in the Listing of Impairments. (R. 378.) Dr. Greenberg noted that Plaintiff "has pain and limitations of prolonged walking, climbing, etc. on a regular basis [that] [s]hould not preclude sedentary work." (R. 379.)

### e. Dr. Aviva Herschman

On March 8, 2013, Plaintiff saw Dr. Aviva Herschman for a follow-up regarding pain in his left knee. (R. 380.) Dr. Herschman noted that Plaintiff suffered from occasional swelling in his left knee but used the TENS unit with "immediate relief of pain." (R. 381.) Plaintiff's gait was stable, coordinated, and smooth. (R. 381.) Dr. Herschman recommended that Plaintiff continue with the TENS unit and prescribed, Voltaren, Flector patches, and Azor. (R. 382.)

Plaintiff saw Dr. Herschman six times between April 5, 2013 and August 23, 2013. (R. 383-400.) On April 26, 2013, Plaintiff reported difficulty walking on the treadmill but some relief with Voltaren gel; his gait was stable, coordinated, and smooth, but Dr. Herschman noted pain in his left leg with occasional tingling. (R. 386-87.) On May 24, 2013, Plaintiff reported joint pain, muscle cramps, and muscle cramps and muscle aches but no stiffness or swelling. (R. 390.) On June 28, 2013, Plaintiff reported joint pain, joint stiffness or swelling, and muscle aches. (R. 392-93.) Dr. Herschman noted that they

discussed using a recumbent bicycle.  (R. 393.)  On July 26, 2013,
Plaintiff reported joint pain and back or neck pain.  (R. 395.)
On August 23, 2013, Plaintiff reported muscle aches but no joint
pain, stiffness, or swelling.  (R. 399.)  On two occasions, Dr.
Herschman noted that Plaintiff had improved weight loss with
increased exercise.  (R. 396, 400.)

DISCUSSION

I.  <u>Standard of Review</u>

        In reviewing the ruling of an ALJ, the Court does not
determine <u>de</u> <u>novo</u> whether Plaintiff is entitled to disability
benefits.  Thus, even if the Court may have reached a different
decision, it must not substitute its own judgment for that of the
ALJ.  <u>See</u> <u>Jones v. Sullivan</u>, 949 F.2d 57, 59 (2d Cir. 1991).
Instead, this Court must determine whether the ALJ's findings are
supported by "substantial evidence in the record as a whole or are
based on an erroneous legal standard."  <u>Persico v. Barnhart</u>, 420
F. Supp. 2d 62, 70 (E.D.N.Y. 2006) (internal quotations marks and
citation omitted).  If the Court finds that substantial evidence
exists to support the Commissioner's decision, the decision will
be upheld, even if evidence to the contrary exists.  <u>See</u> <u>Johnson</u>
<u>v. Barnhart</u>, 269 F. Supp. 2d 82, 84 (E.D.N.Y. 2003).

        "Substantial evidence is such evidence that a reasonable
mind might accept as adequate to support a conclusion."  <u>Id</u>.  The
substantial evidence test applies not only to the ALJ's findings

14

of fact, but also to any inferences and conclusions of law drawn from such facts.  See id.  To determine if substantial evidence exists to support the ALJ's findings, the Court must "examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn."  See Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (internal quotation marks and citation omitted).

II.  Determination of Disability

A claimant must be disabled within the meaning of the Social Security Act (the "Act") to receive disability benefits. See Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000); 42 U.S.C. § 423(a), (d).  A claimant is disabled under the Act when he can show an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The claimant's impairment must be of "such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

The Commissioner must apply a five-step analysis when determining whether a claimant is disabled as defined by the Act. See 20 C.F.R. §§ 404.1520, 416.920.  First, the Commissioner

considers whether the claimant is currently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). Second, the Commissioner considers whether the claimant suffers from a "severe medically determinable physical or mental impairment" or a severe combination of impairments that satisfy the duration requirement set forth at 20 C.F.R. § 404.1509.[3] Third, if the impairment is "severe," the Commissioner must consider whether the impairment meets or equals any of the impairments listed in Appendix 1 of the Social Security regulations (the "Listings"). 20 C.F.R. § 404.1520(a)(4)(iii). "These are impairments acknowledged by the Secretary to be of sufficient severity to preclude gainful employment. If a claimant's condition meets or equals the 'listed' impairments, he or she is conclusively presumed to be disabled and entitled to benefits." Dixon v. Shalala, 54 F.3d 1019, 1022 (2d Cir. 1995) (citation omitted). Fourth, if the impairment or its equivalent is not listed in the Appendix, the claimant must show that he does not have the residual functional capacity ("RFC") to perform tasks required in his previous employment. 20 C.F.R. § 404.1520(a) (4)(iv). Fifth, if the claimant does not have the RFC to perform tasks in his or her previous employment, the Commissioner must determine if there is any other work within the

_____

[3] 20 C.F.R. § 404.1509 provides that "[u]nless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months."

national economy that the claimant is able to perform.  20 C.F.R. § 404.1520(a) (4)(v).  If not, the claimant is disabled and entitled to benefits.

The claimant has the burden of proving the first four steps of the analysis, while the Commissioner carries the burden of proof for the last step.  See Shaw, 221 F.3d at 132.  "In making the required determinations, the Commissioner must consider: (1) the objective medical facts; (2) the medical opinions of the examining or treating physicians; (3) the subjective evidence of the claimant's symptoms submitted by the claimant, his family, and others; and (4) the claimant's educational background, age, and work experience."  Boryk ex rel. Boryk v. Barnhart, No. 02-CV-2465, 2003 WL 22170596, at *8 (E.D.N.Y. Sept. 17, 2003).

III. The ALJ's Decision

The ALJ applied the five-step analysis described above and determined that Plaintiff is not disabled.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 6, 2009.  (R. 16.)

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: (1) internal derangement of the left knee, and (2) obesity.  (R. 17.)  The ALJ also concluded that Plaintiff's hypertension, mild anxiety, and hydronephrosis associated with the absence of his left kidney did not constitute severe impairments.  (R. 17.)

At step three, the ALJ concluded that Plaintiff's impairments, either singularly or in combination, did not meet or equal the severity of one of the impairments listed in Appendix 1 of the Social Security regulations. (R. 18.)

At step four, the ALJ concluded that Plaintiff has the residual functional capacity to perform the full range of sedentary work, as defined in 20 C.F.R. § 404.1567(a). (R. 18.) Dr. Z. Herschman's opinion was "not given great weight and was not controlling" based on its lack of evidentiary support and inconsistency with Plaintiff's daily activities, as well as records indicating that Plaintiff's left knee impairment improved with treatment. (R. 21.) Dr. Greenberg's opinion was given "some weight" based on its consistency with the record. (R. 21.) Dr. Fulco's opinion was given "little weight" because it was contradictory and "not fully supported by the record." (R. 21.) Dr. Skeene's opinion was given "substantial weight" based on its consistency with the medical evidence. (R. 21.) The ALJ concluded that Plaintiff could not perform his past relevant work. (R. 21.)

Finally, at step five, the ALJ concluded that Plaintiff could perform other work existing in the national economy based on his age, education, work experience, residual functional capacity, and Mr. Flomberg's testimony. (R. 22.)

IV.  Analysis of the ALJ's Decision

        The Commissioner filed her motion first and argues that
each step of the ALJ's decision is supported by substantial
evidence.  (See generally Comm'r Br., Docket Entry 12.)  Plaintiff
counters that the ALJ's decision should be reversed and remanded
on the following grounds: (1) the ALJ erred in determining that
Plaintiff's sleep apnea, hypertension, and absence of his left
kidney did not constitute severe impairments[4] (Pl.'s Br., Docket
Entry 17, at 27); (2) the ALJ failed to properly apply the treating
physician rule (Pl.'s Br. at 19-25); (3) the ALJ failed to develop
the record (Pl.'s Br. at 12-15); (4) the ALJ did not properly
evaluate Plaintiff's credibility (Pl.'s Br. at 15-19); and (5) the
ALJ erred in finding that Plaintiff's impairments do not meet or
equal the severity of one of the impairments in the Listings
(Pl.'s Br. at 25-27).  The Court will address each of Plaintiff's
arguments in turn.

    A.  Plaintiff's Severe Impairments

        "Where an ALJ excludes certain impairments from the list
of severe impairments at the second step, any such error is
harmless where the ALJ identifies other severe impairments such
that the analysis proceeds and the ALJ considers the effects of

───────────────────

[4]  Plaintiff does not argue that the ALJ erred in failing to
determine that his anxiety constituted a severe impairment.
(R. 52-53.)

the omitted impairments during subsequent steps." Calixte v. Colvin, No. 14-CV-5654, 2016 WL 1306533, at *23 (E.D.N.Y. Mar. 31, 2016) (collecting cases). The Court finds that any error by the ALJ in declining to find Plaintiff's hypertension and absence of one kidney to be severe impairments was harmless. The ALJ identified Plaintiff's internal derangement of the left knee and obesity as severe impairments, engaged in the remainder of the five-step analysis, and addressed Plaintiff's hypertension and absence of one kidney at step four.[5] (See R. 17-20.)

The Court acknowledges that the ALJ's decision fails to reference sleep apnea. However, "[t]he mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment is not, itself, sufficient to deem a condition severe." Ives v. Colvin, No. 12-CV-0471, 2013 WL 2120273, at *2 (N.D.N.Y. May 15, 2013) (internal quotation marks and citation omitted). Moreover, a finding of "not severe" is appropriate where the evidence establishes "only a slight abnormality [ ] would have no more than a minimal effect on an individual's ability to work." Clark v. Colvin, No. 12-CV-1507,

---

[5] Parenthetically, the Court notes that when the ALJ asked Plaintiff's counsel whether Plaintiff's absence of one kidney was a reason for his disability, counsel replied: "No. We're not alleging that . . . but that's one of the other reasons why [Plaintiff] can't take certain medications, pain medications, because of his kidney function." (R. 53.)

2013 WL 6795627, at *5 (N.D.N.Y. Dec. 18, 2013) (internal quotation marks and citation omitted).

The medical evidence with respect to Plaintiff's sleep apnea is scant, to say the least. On three occasions, Dr. Z. Herschman referenced a sleep study and noted that "sleep [is] a major issue" for Plaintiff. (R. 370-72.) On February 23, 2012, Dr. Z. Herschman discussed the results of a sleep study with Plaintiff, and noted that Plaintiff was using a nasal CPAP mask and "[s]leep apnea [was] being addressed." (R. 375.) The Court finds that the handful of references to sleep apnea in Dr. Herschman's treatment notes does not establish that Plaintiff's sleep apnea had more than a minimal effect on his ability to work. Accordingly, the ALJ's determination that Plaintiff's sleep apnea does not constitute a severe impairment is supported by substantial evidence. See Clark, 2013 WL 6795627, at *6-7 (affirming the ALJ's determination that the plaintiff's sleep apnea was not a severe impairment where "[t]here are no medical reports that do more than mention the fact that plaintiff was diagnosed with sleep apnea, and nowhere is there a medical record that imposes any limitations based upon this impairment") (emphasis in original).

B.   Treating Physician Rule

The "treating physician rule" provides that the medical opinions and reports of a claimant's treating physicians are to be

given "special evidentiary weight."[6] Clark v. Comm'r of Soc. Sec.,

143 F.3d 115, 118 (2d Cir. 1998). Specifically, the regulations

state:

> Generally, we give more weight to opinions
> from your treating sources . . . . If we find
> that a treating source's opinion on the
> issue(s) of the nature and severity of your
> impairment(s) is well-supported by medically
> acceptable clinical and laboratory diagnostic
> techniques and is not inconsistent with the
> other substantial evidence in your case
> record, we will give it controlling weight.

20 C.F.R. § 404.1527(c)(2). Nevertheless, the opinion of a

treating physician "need not be given controlling weight where [it

is] contradicted by other substantial evidence in the record."

Molina v. Colvin, No. 13-CV-4701, 2014 WL 3925303, at *2 (S.D.N.Y.

Aug. 7, 2014) (internal quotation marks and citation omitted).

When an ALJ does not accord controlling weight to the

opinion of a treating physician, he must consider factors that

include: "(1) the length of the treatment relationship and

frequency of the examination; (2) the nature and extent of the

treatment relationship; (3) the extent to which the opinion is

supported by medical and laboratory findings; (4) the physician's

consistency with the record as a whole; and (5) whether the

---

[6] A "treating source" is "your own physician, psychologist, or
other acceptable medical source who provides you, or has
provided you, with medical treatment or evaluation, and who has,
or has had, an ongoing treatment relationship with you."
20 C.F.R. § 416.902.

physician is a specialist." <u>Schnetzler v. Astrue</u>, 533 F. Supp. 2d 272, 286 (E.D.N.Y. 2008). The ALJ must also set forth "'good reasons' for not crediting the opinion of a plaintiff's treating physician." <u>Id.</u> (citing 20 C.F.R. § 416.927(d)(2)).

As previously noted, the ALJ did not accord controlling weight to the opinion of Dr. Z. Herschman; accorded "some weight" to the opinion of Dr. Greenberg; accorded "little weight" to the opinion of Dr. Fulco; and accorded "substantial weight" to the opinion of Dr. Skeene. (R. 21.) The Court will address the weight accorded to each physician's opinion in turn.

### 1. Dr. Z. Herschman

As set forth above, the ALJ held that Dr. Z. Herschman's opinion "was not given great weight and was not controlling." (R. 21.) In declining to accord Dr. Herschman's opinion controlling or great weight, the ALJ found that:

> [A]lthough Dr. Z Herschman personally examined the claimant on many occasions, his opinion was not supported by the medical evidence including his own findings, and was inconsistent with the claimant's activities of daily living. Dr. Herschman's records show that the claimant's left knee impairment rapidly improved with treatment. In addition, while Dr. Herschman's examination findings support the conclusion that the claimant's ability to stand and walk is somewhat limited, there are no findings to support significant limitation of the claimant's ability to sit.

(R. 21.)

First, the Court finds that the ALJ's failure to identify the weight given to Dr. Z. Herschman's opinion constitutes legal error requiring remand.  The treating physician rule requires that the ALJ's decision "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Social Security Ruling 96-2p, 1996 WL 374188, at *5 (July 2, 1996). While the ALJ held that Dr. Herschman's opinion was not controlling or given great weight, it is impossible for the Court to definitively say whether this opinion was given some weight, little weight, or no weight.  Indeed, the Court could reasonably interpret the ALJ's decision as according no weight to Dr. Herschman's opinion regarding Plaintiff's sitting limitations based on the ALJ's conclusion that "there are no findings to support significant limitation of the claimant's ability to sit."  (R. 21.)

Accordingly, on remand the ALJ should identify the degree of weight given to Dr. Z. Herschman's opinion and explain why Dr. Herschman's opinion deserves such weight.  See, e.g., Miller v. Comm'r of Social Sec., No. 13-CV-6233, 2015 WL 337488, at *23 (S.D.N.Y. Jan. 26, 2015) (holding that the ALJ erred by failing to specify the amount of weight accorded to the opinions of the plaintiff's treating physicians); Norman v. Astrue, 912 F. Supp. 2d 33, 84 (S.D.N.Y. 2012) (remanding to the Commissioner

where the ALJ's decision was, _inter_ _alia_, unclear as to the amount
of weight given to the treating physician's opinion).

Second, the Court finds that the ALJ failed to develop
the record regarding Dr. Z. Herschman's opinion. (See Pl.'s Br.
at 21-22.) "[T]he Court must assess whether the ALJ satisfied his
threshold duty to adequately develop the record before deciding
the appropriate weight of a treating physician's opinion." Khan
v. Comm'r of Social Sec., No. 14-CV-4260, 2015 WL 5774828, at *13
(E.D.N.Y. Sept. 30, 2015) (citation omitted). Pursuant to
regulations that took effect on March 26, 2012, the ALJ may resolve
any inconsistency or insufficiency in the evidence by: (1) re-
contacting the treating physician; (2) requesting additional
existing records; (3) asking the claimant to undergo a consultative
examination at the Commissioner's expense; or (4) asking the
claimant or others for additional information. 20 C.F.R.
§ 404.1520b(c).[7] The Second Circuit has directed that
notwithstanding the revised 20 C.F.R. § 404.1520b, "it may be
incumbent upon the ALJ to re-contact medical sources in some
circumstances." Khan, 2015 WL 5774828, at *14. In applying 20
C.F.R. § 404.1520b, courts in this Circuit have held that where
additional information is needed regarding the opinion of a

---

[7] However, the ALJ may choose not to seek clarification from a
medical source where he or she "know[s] from experience that the
source either cannot or will not provide the necessary
evidence." 20 C.F.R. § 416.920b(c)(1).

treating physician, the ALJ should contact the treating source "for clarification and additional evidence." McClinton v. Colvin, No. 13-CV-8904, 2015 WL 6117633, at *23 (S.D.N.Y. Oct. 16, 2015) (collecting cases). But see Vanterpool v. Colvin, No. 12-CV-8789, 2014 WL 1979925, at *17 (S.D.N.Y. May 15, 2014) ("[b]ecause the ALJ did not reject [the treating physician's] opinion due to gaps in the record, he was not required to contact the physician for further information or clarification").

As previously noted, the ALJ declined to accord Dr. Z. Herschman's opinion controlling weight based on, inter alia, the absence of any "findings to support significant limitation of the claimant's ability to sit." (R. 21.) However, Dr. Herschman's treatment notes are silent with respect to Plaintiff's ability to sit; they do not contain findings contrary to his assessment. It appears that the ALJ inferred that this silence in Dr. Herschman's treatment records indicates that Plaintiff never reported difficulty sitting and/or that Dr. Herschman implicitly concluded that Plaintiff had no sitting limitations. The Court finds that the ALJ should have re-contacted Dr. Herschman for clarification on this issue rather than making such an inference.

Additionally, as addressed more fully infra, the Appeals Council's decision directed the ALJ to obtain updated records from treating sources if available. (R. 108.) However, the record does not indicate that the ALJ attempted to obtain records from

Plaintiff's treating sources after the Appeals Council rendered its decision in 2013. (R. 355-358.) The Court finds that the ALJ erred in failing to obtain updated treatment records from Dr. Herschman. On remand, the ALJ should attempt to obtain Dr. Herschman's treatment records for the remainder of 2012 and 2013, if available.

The Court makes no determination as to the appropriate amount of weight to be accorded to Dr. Z. Herschman's opinion and acknowledges, as noted by the ALJ, that Dr. Herschman's treatment records also speak to Plaintiff's improvement. (See R. 370-75.) However, the Court finds that the ALJ erred by failing to specify the amount of weight accorded to Dr. Herschman's opinion and by failing to fully develop the record.[8]

The Commissioner alleges that Dr. Z. Herschman's license to practice medicine was revoked in 2013 following his conviction for grand larceny in connection with Medicare fraud. (Comm'r Br. at 7 n.5.) Plaintiff does not dispute that Dr. Herschman's license was suspended but argues that the status of Dr. Herschman's license is irrelevant because it was not considered by the ALJ. (Pl.'s Br. at 19 n.4.) However, Plaintiff concedes that the status of

---

[8] The Court need not address Plaintiff's remaining arguments regarding the ALJ's failure to accord controlling weight to Dr. Herschman's opinion in light of its determination that further development of the record is warranted. (See generally Pl.'s Br. at 19-22.)

Dr. Herschman's license "may be relevant to the weight attributed to his opinion in any future agency proceedings on Plaintiff's February 2011 application for benefits." (Pl.'s Br. at 19 n.4.) The Court acknowledges that Dr. Herschman's alleged loss of his license and/or conviction may render it difficult or impossible for the ALJ to further develop the record. On remand, the Court directs the ALJ to use his best efforts to re-contact Dr. Herschman or otherwise develop the record in a manner consistent with this Memorandum and Order. The Court makes no determination as to whether Dr. Herschman's license revocation and/or conviction is relevant to the ALJ's reevaluation of Dr. Herschman's opinion on remand.

### 2. Dr. Greenberg

Plaintiff argues that the ALJ erred in according "some weight" to Dr. Greenberg's opinion because he did not personally examine Plaintiff; he is a pulmonologist, not a musculoskeletal specialist; and his opinion was vague. (Pl.'s Br. at 22-23.) The Court agrees.

Generally, "'the written reports of medical advisors who have not personally examined a claimant . . . deserve little weight in the overall evaluation of disability.'" Simmons v. Colvin, No. 15-CV-0377, 2016 WL 1255725, at *15 (E.D.N.Y. Mar. 28, 2016) (quoting Cabibi v. Colvin, 50 F. Supp. 3d 213, 235 (E.D.N.Y. 2014) (noting that reports by non-examining medical advis[o]rs are

generally accorded little weight "because the advisors' assessment of what other doctors find is hardly a basis for competent evaluation without a personal examination of the claimant")). However, a non-examining consultative physician's opinion may constitute substantial evidence where it is supported by other evidence in the record. Simmons, 2016 WL 1255725, at *15 (collecting cases).

The record indicates that Dr. Greenberg, a Diplomate of the American Board of Internal Medicine who is certified by the Subspecialty Board in Pulmonary Disease,[9] (R. 175), did not examine Plaintiff, (R. 377). Dr. Greenberg asserted that Plaintiff "continues to have pain off and on with range of motion decrease but only moderate decrease in ability to stand and walk[,]" and concluded that Plaintiff "has pain and limitations of prolonged walking, climbing, etc. on a regular basis. Should not preclude sedentary work." (R. 377, 379.) In support of his determination that Plaintiff is capable of performing sedentary work, Dr. Greenberg cited to Dr. Z. Herschman's records. (R. 378.)[10]

_____

[9] While the Commissioner asserts that as an internist, Dr. Greenberg "was trained in the diagnosis and treatment of, among other things, diseases affecting the joints," (Comm'r Reply Br., Docket Entry 20, at 7), it is undisputed that Dr. Greenberg is not a musculoskeletal specialist.

[10] The Court assumes that Dr. Greenberg is referring to Dr. Z. Herschman as Dr. Greenberg's opinion predates Dr. A. Herschman's treatment notes.

In according Dr. Greenberg's opinion "some weight," the ALJ acknowledged that this non-examining opinion was vague but held that it was consistent with the record. (R. 21.) However, the Court finds that Dr. Greenberg's opinion--which uses the term "moderate" without additional information or development--is "so vague as to render [it] useless in evaluating the claimant's [residual functional capacity]." Adesina v. Astrue, No. 12-CV-3184, 2014 WL 5380938, at *9 (E.D.N.Y. Oct. 22, 2014) (internal quotation marks and citation omitted). Indeed, the vagueness of this opinion is highlighted by Dr. Greenberg's use of the term "etcetera." Moreover, while Dr. Greenberg opines that Dr. Z. Herschman's records support Plaintiff's ability to perform sedentary work, (R. 377-78), as previously noted, Dr. Z. Herschman's treatment notes are silent as to Plaintiff's ability to sit and his assessment expressly states that Plaintiff can only sit for twenty minutes. (R. 363.) Accordingly, the Court finds that the ALJ erred in according Dr. Greenberg's opinion "some weight."

### 3. Dr. Fulco

The Court finds that the ALJ's accordance of "little weight" to Dr. Fulco's opinion is supported by substantial evidence. (R. 21.) Dr. Fulco is a board certified internist who did not examine Plaintiff. (R. 58-59, 74.) As noted by the ALJ, Dr. Fulco's opinion that Plaintiff had limitations from 2009 to

2012 but was able to stand and walk for two hours and sit for six hours as of August 1, 2012, was vague, to say the least. (R. 21, 62-63.) Dr. Fulco testified that he agreed with Dr. Skeene and Dr. Z. Herschman, but that Dr. Herschman's opinion "override[d]" Dr. Skeene's opinion because Dr. Herschman was Plaintiff's treating physician. (R. 65.) However, when asked whether it was fair to say that Plaintiff had severe knee pain from 2009 to 2011, Dr. Fulco responded "I really cannot answer that without medical evidence." (R. 68.) Similarly, Dr. Fulco equivocally opined that "[i]t's possible" that Plaintiff's knee pain improved and then got worse. (R. 68.) The Court finds that the fact that Dr. Fulco is not a specialist, did not examine Plaintiff, and posited a vague opinion supports the ALJ's determination.

Parenthetically, Plaintiff argues that the ALJ erred in finding that Dr. Fulco's testimony that he agreed with the opinions of both Dr. Skeene and Dr. Z. Herschman was contradictory and unsupported by the record. (R. 21; Pl.'s Br. at 23-24.) The Court concurs that the opinions of Drs. Skeene and Z. Herschman are not necessarily contradictory and, as noted, Dr. Fulco ultimately concluded that Dr. Z. Herschman's opinion "override[d]" Dr. Skeene's opinion. (R. 65.) Nevertheless, the previously noted deficiencies in Dr. Fulco's opinion support the accordance of "little weight."

4. Dr. Skeene

Finally, Plaintiff argues that the ALJ erred in according "substantial weight" to Dr. Skeene's opinion. (R. 21; Pl.'s Br. at 24.) The ALJ held that while Dr. Skeene only examined Plaintiff once and posited a vague opinion, his opinion "was consistent with the objective medical evidence," and, thus, entitled to "substantial weight." (R. 21.) However, as noted by Plaintiff, Dr. Skeene's opinion is inconsistent. (See Pl.'s Br. at 24.) Dr. Skeene concluded that Plaintiff "has moderate limitations for prolonged standing and walking due to limited [range of motion] of the lumbar spine." (R. 345 (emphasis supplied).) However, Dr. Skeene noted that Plaintiff suffers from left knee pain and had no range of motion limitations with respect to his lumbar spine. (R. 344-45.) While Dr. Skeene's reference to the lumbar spine is likely a typographical error based on his finding that Plaintiff had limited range of motion in his left knee, (R. 345), the ALJ should have sought clarification on this issue from Dr. Skeene. On remand, the ALJ should develop the record regarding Dr. Skeene's inconsistent findings and reevaluate the weight placed on Dr. Skeene's opinion.

C. Development of the Record

Plaintiff argues that the ALJ also did not fully develop the record by failing to obtain treatment notes from his internist,

Dr. Geffken, and failing to request a medical source statement from Dr. A. Herschman. (Pl.'s Br. at 12-14.) The Court agrees.

The Appeals Council's decision remanding this matter directs the ALJ to "[o]btain updated medical records, if available, from treating sources[.]" (R. 108.) Plaintiff's Disability Report form indicates that Dr. Geffken of Bethpage Primary Medical Care treated him for "[g]eneral care, hypertension, [and] left knee pain," between 2000 and 2011. (R. 259.) A disability worksheet states that the Agency contacted Dr. Geffken's practice on two occasions in 2011, but apparently received no response. (R. 355.) However, the record does not indicate that the ALJ attempted to obtain medical records from Dr. Geffken subsequent to the Appeals Council's 2013 decision. The Commissioner's argument that updated records from Dr. Geffken were not available, (Comm'r Reply Br., at 2), is unpersuasive in light of the ALJ's failure to make any attempt to obtain such records. Additionally, while the Commissioner notes Plaintiff's counsel's failure to object to the absence of these records at the hearing and/or request the issuance of a subpoena, (Comm'r Br. at 2), the ALJ has a duty to develop the record even when the plaintiff is represented by an attorney. See Khan, 2015 WL 5774828, at *13. On remand, the ALJ should contact Dr. Geffken to obtain his treatment notes. Parenthetically, to the extent that Dr. Geffken's records are available, they will resolve the gap in the record regarding

33

Plaintiff's alleged consistent treatment with Dr. Geffken. (Pl.'s Br. at 15-16.)

The Court finds that the ALJ also erred in failing to request a medical source statement from Dr. A. Herschman. The Second Circuit has held that "remand is not always required when an ALJ fails in his duty to request opinions, particularly where . . . the record contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity." Tankisi v. Comm'r of Social Sec., 521 F. App'x 29, 34 (2d Cir. 2013) (declining to remand based on the ALJ's failure to request a residual functional capacity opinion where the "voluminous medical record assembled by the claimant's counsel [ ] was adequate to permit an informed finding by the ALJ"). "Nevertheless, while an ALJ may, in some circumstances, proceed without a medical source opinion as to the claimant's functional limitation, there still must be 'sufficient evidence' for the ALJ to properly make the [residual functional capacity] determination." Simmons, 2016 WL 1255725, at *17. See Floyd v. Colvin, No. 13-CV-4963, 2015 WL 2091871, at *10 (E.D.N.Y. May 5, 2015) (holding that the ALJ erred in failing to request statements regarding the plaintiff's physical capabilities from his treating physicians).

Here, the record contains Dr. Skeene's opinion dated June 1, 2011 (R. 343); S. Collier's opinion dated June 14, 2011 (R. 349-54); Dr. Z. Herschman's treatment notes from February 17,

2011 through February 23, 2012 and opinion dated February 23, 2012 (R. 362-75); and Dr. Greenberg's opinion dated March 24, 2012 (R. 377-80). The only medical evidence for 2013 consists of Dr. A. Herschman's treatment notes, which do not contain an assessment of Plaintiff's physical abilities. (See generally R. 380-400.) Accordingly, there is a gap in the record regarding Plaintiff's functional limitations, if any, during early 2012 through 2013. On remand, the ALJ should contact Dr. A. Herschman and request a medical source statement.

D.    Credibility

"A treating physician's opinion is a significant part of the evidence that is weighed in determining credibility of a claimant under 20 C.F.R. § 404.1529." Garner v. Colvin, No. 13-CV-4358, 2014 WL 2936018, at *10 (S.D.N.Y. June 27, 2014). Thus, the Court can only properly assess credibility "after the correct application of the treating physician rule." Id. (remanding to the Commissioner and directing that "the issue of credibility . . . be revisited on remand, and evaluated in light of the proper application of the treating physician rule and [the factors for evaluating credibility]"). Accordingly, the ALJ should readdress the issue of credibility on remand after developing the record and properly applying the treating physician rule.

E.    The Listings

Plaintiff argues that the ALJ erred in determining that Plaintiff's knee impairment does not meet the criteria in Section 1.02A or 1.03 of the Listings. (Pl.'s Br. at 25-27; R. 18.) On remand, the ALJ should reevaluate whether Plaintiff's knee impairment satisfies the Listings after the record is further developed.

F.   Remand to a Different ALJ

Plaintiff requests that this matter be remanded to a different ALJ. (Pl.'s Br. at 28.) Generally, the decision to assign a case to a different ALJ is within the Commissioner's discretion. Taylor v. Astrue, No. 07-CV-3469, 2008 WL 2437770, at *5 (E.D.N.Y. Jun. 17, 2008). Nevertheless, courts have directed the Commissioner "to appoint a new ALJ on remand where appropriate." Id. In determining whether a new ALJ should be appointed on remand, courts consider factors that include:

> (1) a clear indication that the ALJ will not apply the appropriate legal standard on remand; (2) a clearly manifested bias or inappropriate hostility toward any party; (3) a clearly apparent refusal to consider portions of the testimony or evidence favorable to a party, due to apparent hostility to that party; (4) a refusal to weigh or consider evidence with impartiality, due to apparent hostility to any party.

Alfaro v. Colvin, 14-CV-4392, 2015 WL 4600654, at *12 (E.D.N.Y. Jul. 29, 2015). While the record does not indicate any bias or hostility on the part of the ALJ, the Court finds that remand to

a different ALJ for a "fresh look" is warranted in light of the previously noted errors of law in the ALJ's decision as well as his failure to fully develop the record and follow the decision of the Appeals Council.  See Vicari v. Astrue, No. 05-CV-4967, 2009 WL 331242, at *6 (E.D.N.Y. Feb. 10, 2009) (Remanding to a different ALJ where the underlying decision "which was authored with the benefit of multiple remand orders from the Appeals Council, contained fundamental errors of law and evinced a failure. . . to consider the full medical evidence[.]").  The Court notes that the Commissioner has not expressly opposed Plaintiff's request. (See generally Comm'r Reply Br.)  Accordingly, the Commissioner is directed to assign this matter to a different administrative law judge on remand.

CONCLUSION

For the foregoing reasons, the Commissioner's motion (Docket Entry 11) is DENIED, Plaintiff's motion (Docket Entry 16) is GRANTED, and this action is REMANDED for further proceedings consistent with this Memorandum and Order.  The Clerk of the Court is directed to mark this matter CLOSED.

SO ORDERED

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: August   25  , 2016
       Central Islip, New York